TRIEBSCH v. ATHLETIC MINING & SMELTING COMPANY.

5-621                                        280 S. W. 2d 719

Opinion delivered June 13, 1955.

*Heartsill Ragon,* for appellant.

*Daily & Woods,* for appellee.

ROBINSON, J.  The appellant is the widow of Arnold G. Triebsch.  Prior to his death, Triebsch had been awarded compensation for an injury received in the course of his employment, and for which he was being paid compensation at the time of his death.  The issue is whether he died from the effects of the injury causing his disability or from some other cause.  The Workmen's Compensation Commission held that his death was not the result of the disability for which he had been awarded compensation and hence that the widow is not entitled to recover death benefits.

The law is settled in this State that if the employee dies as a result of the disability for which he had been awarded compensation, the cause of such disability is *res judicata.*  We said in *Bell* v. *Batesville White Lime*

*Company,* 217 Ark. 379, 280 S.W. 2d 643: ''We think the Commission erred in retrying the issue of accidental injury. When the Commission's finding upon an employee's claim is *res judicata* as to his widow and children is a question of first impression in Arkansas. Several states have held that the rule of *res judicata* does not apply, but in most of them the peculiar wording of the compensation act permits the commission to modify its awards at any time. Our own provision for modification is not so broad. See § 81-1326. We believe the better reasoned cases to be those holding that a decision rendered during the employee's lifetime upon his assertion of compensable disability is binding when his dependents raise the same issue after his death.''

This court has held previously that Triebsch's disability was compensable. *Triebsch* v. *Athletic Mining & Smelting Company,* 218 Ark. 379, 237 S. W. 2d 26. Hence, there is only one issue in the case at bar and that is: Did Triebsch die from the same cause that brought about his disability?

For nineteen years, Triebsch had worked in the boiler room of the Athletic Mining & Smelting Company's plant at Fort Smith. On the night of January 28, 1949, he became disabled. With reference to his disability, this court made the specific finding: ''In the course of his work on that night appellant (Triebsch) collapsed and suffered a physically disabling attack, or breakdown, so that he is now totally and permanently disabled.''

The record in the first case was made a part of the record in the case at bar. There was evidence in the first case that Triebsch suffered with bronchial asthma, bronchiectasis, emphysema and chronic nephritis. Whether the nephritis was caused by the pulmonary trouble, which was in turn caused by his working conditions, was a sharply contested point. In the first case, the employer contended that Triebsch's disability was due to a ''combination of renal (pertaining to the kidney) and pulmonary factors, the primary cause being principally of renal origin'', and that ''the renal disease was degenerative in

character and in no way associated with the pulmonary condition".

Whether the kidney condition resulted from the lung condition was an issue in the first case. In that case, Dr. Cull, who was a witness on behalf of the employer, said: "In my opinion, Mr. Triebsch's disability is definitely due to a combination of both pulmonary emphysema and nephritis. . . . I do not regard the pulmonary emphysema in this case as either a causative or contributory factor in the chronic nephritis." On the other hand Dr. Hoge, who testified on behalf of the employee, stated: "I further disagree with Dr. Cull in his statement that the pulmonary emphysema is not a causative or contributory factor in the chronic nephritis. I disagree with this statement because his (Triebsch's) previous records show that he had had an infection associated with emphysema, and there is no other factor to which one can attribute the etiology of this nephritis. It is a known fact that infection in any part of the body can and usually is the etiologic factor causing chronic glomerulonephritis." Appellees' principal contention in the case at bar is that Triebsch did not have glomerulonephritis; that glomerulonephritis can be due to an infection but that the kind of nephritis that Triebsch had could not be caused by an infection. This is one of the same issues that was present in the first case.

In the first case, it was shown that Triebsch was totally and permanently disabled due to lung and kidney trouble which was aggravated by his working conditions and was therefore compensable. According to the undisputed evidence in the case at bar, he died because of lung and kidney trouble, the very same lung and kidney trouble this court has previously held to be compensable. Therefore, the issue is *res judicata* and appellant is entitled to collect the death benefits provided by the Workmen's Compensation Law.

Reversed.

Justices McFADDIN and GEORGE ROSE SMITH dissent.

Justice HOLT not participating.

ED. F. McFADDIN, Justice. (dissenting). The first three paragraphs of the majority opinion give a succinct statement of this case; and these paragraphs conclude with this sentence: "Hence, there is only one issue in the case at bar, and that is: did Triebsch die from the same cause that brought about his disability?" That question is correctly stated; and, from the record in the present case, I am convinced that there was substantial evidence to support the Commission's findings, which were that Mr. Triebsch died from *kidney trouble* and *not from the bronchial ailment* for which he received compensation.

A careful study of the opinion in the first case[1] shows that Mr. Triebsch was allowed compensation solely because of his collapse from a bronchial ailment. The question now is whether he died from the bronchial ailment. Dr. Koenig was a pathologist who made an extensive postmortem examination of Mr. Triebsch; and it was Dr. Koenig's view that Mr. Triebsch's death was due to the kidney ailment. Dr. Chamberlain was asked this question and gave the answer as follows:

"Q. In your opinion, and based on Dr. Koenig's findings from the evidence disclosed by the post-mortem examination, and your own examination and treatment of Mr. Triebsch during his limetime and the other medical and laboratory evidence in the record before the commission, did Mr. Triebsch's exposure to the dust, smoke and fumes and other environmental factors disclosed by the record at his working place at the Smelter prior to January 29, 1949, so affect any of his existing diseased conditions that his death occurred any sooner than it would have occurred had he never worked at the Smelter, but had engaged in other labor involving equivalent exertion out of doors?

"A. In my opinion, no."

The foregoing is the testimony of a doctor to the effect that Mr. Triebsch's death was not hastened in

[1] *Triebsch* v. *Athletic Mining & Smelting Co.*, 218 Ark. 379, 237 S. W. 2d 26.

any way by the bronchial trouble, and that his death came about by reason of the kidney trouble.

Dr. Hogue testified that Mr. Triebsch died because of the bronchial trouble. Dr. Koenig, the pathologist, admitted that Mr. Triebsch's death might have been hastened 24 hours by reason of the bronchial trouble. If there were no testimony in the record except that of these two witnesses, I would have reversed the Commission, because if Mr. Triebsch's death was hastened to any extent by reason of the bronchial trouble (the original injury for which he drew compensation), then his widow was entitled to compensation. But Dr. Chamberlain flatly stated, as quoted, that Mr. Triebsch's death was not hastened one iota by the bronchial trouble for which he drew compensation. Dr. Chamberlain's testimony is substantial and supports the Commission's findings; and, under our cases, we must affirm the Commission's findings when they are supported by substantial testimony.[2]

It is not a question of what our views may be as between the conflicting opinions of the medical experts. I wish that we weighed these cases on the "preponderance of the evidence rule" rather than the "substantial evidence rule." My views in this regard are contained in my dissenting opinion in the case of *J. L. Williams & Son* v. *Smith*, 205 Ark. 604, 170 S. W. 2d 82; but until the Legislature changes the rule for weighing the evidence, or until the Court adopts the views of said dissenting opinion, then I feel honor bound to decide these cases on the "substantial evidence rule"; and under that rule, I must dissent from the majority holding in the case at bar.

---

[2] For a collection of the cases so holding see West's Ark. Digest "Workmen's Compensation," § 1939 of Cumulative Pocket Supplement.